# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

EDITHA SALVADOR,

    Plaintiff,

v.

BANK OF NEW YORK MELLON, et al.,

    Defendants.

Case No. 2:17-cv-02857-APG-CWH

**ORDER GRANTING MOTIONS TO DISMISS, DENYING MOTION TO STRIKE AS MOOT, DENYING MOTIONS FOR SUMMARY JUDGMENT, AND DENYING MOTION FOR INJUNCTIVE RELIEF**

(ECF Nos. 11, 14, 19, 39, 41, 48, 67)

    Plaintiff Editha Salvador owns property located at 4404 Grey Spencer Drive in Las Vegas. She financed the purchase of the property through an adjustable rate loan that was secured by a deed of trust on the property. After she defaulted on her payments, defendant Bank of New York Mellon (BONY) initiated non-judicial foreclosure proceedings under the deed of trust. In an effort to avoid foreclosure, Salvador filed this lawsuit against BONY, who is the holder of the note and the beneficiary of record under the deed of trust; Quality Loan Servicing Corporation, the trustee under the deed of trust; BONY's former loan servicer, Select Portfolio Servicing, Inc.; Bank of America, to whom Salvador previously made loan payments; and Bayview Loan Servicing, LLC, BONY's current loan servicer. The defendants filed various motions to dismiss the complaint. Salvador moves for summary judgment, and to enjoin the foreclosure sale, currently set for April 27, 2018.

    I grant the defendants' motions to dismiss because Salvador has failed to allege a valid claim against any of these defendants. I deny Salvador's motions for summary judgment for the same reason and because (contrary to Salvador's contention) the defendants timely responded to her complaint. Even if they had not, I would set aside any default. I Salvador's motion for

injunctive relief because she has not shown a likelihood of success on any claim that would support enjoining the foreclosure sale.

**I. BACKGROUND**

Salvador purchased the property for $1,074,420 in September 2006. ECF No. 1 at 52. She obtained a $752,000 adjustable rate note from Meridias Capital, Inc. to partially finance the purchase, and she made a $322,420 down payment. *Id.* at 3, 8, 14. The loan was secured by a deed of trust encumbering the property. ECF No. 11-2.[1] The deed of trust identified Salvador as the borrower, Meridias as the lender, First American Title as the trustee, and Mortgage Electronic Registration Systems, Inc. (MERS) as the beneficiary solely as the nominee for the lender and its successors and assigns. *Id.* at 2-3.

There is no recorded assignment of the loan or deed of trust from Meridias to Countrywide, but Salvador made mortgage payments to Countrywide. ECF No. 1 at 4. The loan then passed to Bank of America, but there is no recorded assignment of the loan or deed of trust reflecting a transfer from Countrywide to Bank of America. *Id.* Salvador made mortgage payments to Bank of America and sought a loan modification, but was denied. *Id.*

In March 2012, MERS assigned the deed of trust to BONY, as trustee for the holders of the Alternative Loan Trust 2006-OA19, Mortgage Pass Through Certificates, Series 2006 OA19. *Id.* at 75. In December 2013, BONY substituted the original trustee, First American Title, with defendant Quality Loan Servicing Corporation. *Id.* at 77.

On June 12, 2014, Quality recorded a notice of default and election to sell. *Id.* at 81. In connection with that notice, Quality recorded an affidavit of authority to exercise the power of sale executed by defendant Select Portfolio Servicing, Inc. *Id.* at 85-88. That affidavit identified

---

[1] When ruling on a Rule 12(b)(6) motion to dismiss, I generally may not consider evidence outside the complaint without converting the motion into one for summary judgment. *See* Fed. R. Civ. P. 12(b). However, I may consider certain materials without converting the motion. For example, I may take judicial notice of the fact that documents were recorded in the Clark County recorder's office, although I do not take judicial notice of the truth of any statements therein because those facts are subject to reasonable dispute. *United States v. Ritchie*, 342 F.3d 903, 908-09 (9th Cir. 2003) (citing Fed. R. Evid. 201(b)). I therefore will take judicial notice of the fact that the deed of trust was recorded.

BONY, care of Select Portfolio, as the holder of the note and beneficiary of record. *Id.* at 85-86. Quality was identified as the loan servicer. *Id.* at 86. The affidavit also identified the only recorded assignment of the deed of trust as the March 2012 transfer from MERS to BONY. *Id.* at 87-88.

On October 14, 2014, Salvador and Quality participated in a mediation conference under Nevada's Foreclosure Mediation Program (FMP). *Id.* at 91. The parties were unable to reach a resolution, and the FMP issued a certificate allowing BONY to proceed with the foreclosure process. *Id.* In May 2015, Quality recorded a notice of a trustee's sale set for June 10, 2015. *Id.* at 92. That sale did not take place, and on September 3, 2015, Quality rescinded the June 12 notice of default. *Id.* at 79.

Quality recorded a new notice of default and election to sell in April 2016. *Id.* at 95. That notice included another affidavit of authority to exercise the power of sale identifying BONY, care of Select Portfolio, as the note holder and beneficiary of record, and Select Portfolio as the loan servicer. *Id.* at 100. It identified the only recorded assignment of the deed of trust as being the March 2012 assignment from MERS to BONY. *Id.* at 102. Salvador elected to again proceed to mediation under the FMP on May 9, 2016. ECF No. 74-1. The parties had an unsuccessful mediation on August 22, 2016. ECF No. 74-2. The FMP indicated it would issue a certificate of foreclosure on October 17, 2016. *Id.* However, the FMP did not actually issue the certificate until February 28, 2018, which was recorded on March 8, 2018. ECF No. 69-10. Quality issued a new notice of sale on March 30, 2018, setting the sale for April 27. ECF No. 69-11.

Based on these allegations, Salvador brought suit in this court alleging that the defendants violated various federal and state laws by placing her into a negative amortization loan where her loan balance would increase even as she made timely payments. She also alleges BONY cannot foreclose because it cannot show it is the holder of the note and beneficiary of record because there is no recorded assignment from Meridias to Countrywide or from Countrywide to Bank of America, so the transfer from Bank of America to BONY is invalid. Salvador asserts the defendants are liable under 15 U.S.C. § 45(a); the Truth in Lending Act (TILA), 15 U.S.C.

§ 1601, *et seq.*; the Homeownership Equity Protection Act (HOEPA),15 U.S.C. § 1689; 15 U.S.C. § 1607; and Nevada Revised Statutes § 598D.

Salvador previously moved for an injunction, which I denied because she did not identify a potential impending foreclosure sale. ECF Nos. 3, 4. The defendants then moved to dismiss on a variety of grounds. Salvador filed two motions for summary judgment. She also moves to enjoin the recently noticed foreclosure sale.

**II. SALVADOR'S MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 39, 48)**

Salvador moves for summary judgment against Bank of America, BONY, and Bayview, arguing that they failed to timely respond to the complaint after being served. She also argues she did not receive documents from these defendants after the court later ordered the defendants to send them to her. Bank of America responds that service was never properly completed on it because Salvador never requested or obtained a summons, so Bank of America was not served with a copy of the summons. BONY and Bayview respond that they attempted personal service on Salvador several times but were unable to contact her at her home, so they mailed their motion to dismiss via first class mail. They also note that Salvador is not prejudiced because she obtained both a copy of their motion and Bank of America's joinder to Select Portfolio's motion.

The docket does not reflect that Salvador requested or obtained a summons. *See also* ECF No. 7 (Salvador's certificate of service showing she mailed the complaint, her request for injunctive relief, and a notice of lis pendens, but no mention of a summons). She thus has not properly served Bank of America, BONY, or Bayview under Federal Rule of Civil Procedure 4(c). Consequently, these defendants have not defaulted by failing to respond within twenty-one days. *See* Fed. R. Civ. P. 12(a)(1)(A)(i) (providing that the defendant must serve an answer "within 21 days after being served with the summons and complaint"). Further, Salvador did not follow the proper procedure to obtain a default judgment by first seeking entry of default under Rule 55(a).

Even if these defendants defaulted, I would set aside entry of default. "The court may set aside an entry of default for good cause . . . ." Fed. R. Civ. P. 55(c). When determining whether

good cause exists, the court considers (1) "whether the defendant's culpable conduct led to the default," (2) "whether the defendant has a meritorious defense," and (3) "whether reopening the default judgment would prejudice the plaintiff." *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001), *overruled on other grounds*, *Egelhoff v. Egelhoff ex. rel. Breiner*, 532 U.S. 141 (2001). With regard to the first factor, "a defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and intentionally failed to answer." *Id.* at 697 (emphasis and quotation omitted). However, if the defendant offers a good faith explanation for its neglectful failure to answer, and that explanation negates any intent to take advantage of the plaintiff, interfere with judicial decision-making, or otherwise manipulate the legal process, such failure is not "intentional." *Id.* at 697-98. A defendant's conduct is culpable "where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *Id.* at 698.

Here, BONY and Bayview filed a motion to dismiss on December 26, 2017. ECF No. 19. Bank of America filed a joinder to Select Portfolio's motion to dismiss on January 2, 2018. ECF No. 22. Thus, within approximately a month and a half after Salvador filed her complaint, the defendants responded despite the improper service. There is no evidence the defendants engaged in culpable conduct. The defendants have offered meritorious defenses to Salvador's claims. Finally, reopening would not prejudice Salvador. The defendants promptly filed their motions and Salvador has had an opportunity to respond to them. Further, as discussed below, Salvador's claims are subject to dismissal, and her motions are not supported by evidence showing she is entitled to judgment as a matter of law on any of her claims. *See* Fed. R. Civ. P. 56. I therefore deny Salvador's motions for summary judgment.

**III. MOTIONS TO DISMISS (ECF Nos. 11, 14, 19)**

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). However, I do not necessarily assume the truth of legal conclusions merely because they are cast in the form of

factual allegations in the complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

### A. 15 U.S.C. § 45(a)

Salvador alleges she was placed into a negative amortization loan, which she contends is an illegal practice under 15 U.S.C. § 45(a). The defendants argue this claim fails as a matter of law because it does not apply to banks; there is no private right of action under § 45; even if there were, none of these defendants was involved in originating the loan; and the loan is an adjustable rate loan, not a negative amortization loan. Salvador responds that because the defendants economically benefitted from the transaction, they are accomplices to the alleged predatory loan practices.

Section 45(a)(1) declares unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce . . . ." There is no private right of action under this statute. *Carlson v. Coca-Cola Co.*, 483 F.2d 279, 280-81 (9th Cir. 1973). Enforcement of § 45 lies with the Federal Trade Commission. *See* 15 U.S.C. §§ 41, 45(a)(2), 45(m). I therefore grant the defendants' motions to dismiss this claim with prejudice.

### B. TILA, HOEPA, 15 U.S.C. § 1607

Salvador's complaint cites to TILA, HOEPA, and 15 U.S.C. § 1607. The defendants argue these statutes do not apply to them because they were not involved in originating the loan, Salvador has not identified what provisions the defendants allegedly violated, and the claims are time barred. Salvador responds that because the loan was a negative amortization loan that she was duped into accepting, it is void and cannot be enforced regardless of the statute of limitations.

"A claim may be dismissed as untimely pursuant to a 12(b)(6) motion only when the running of the statute of limitations is apparent on the face of the complaint." *United States ex rel.*

*Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (alteration and quotation omitted). Generally, TILA and HOEPA claims must be brought "within one year from the date of the occurrence of the violation . . . ." 15 U.S.C. § 1640(e). Claims alleging a violation of sections 1639, 1639b, or 1639c "may be brought . . . before the end of the 3-year period beginning on the date of the occurrence of the violation." *Id.* These limitation periods are subject to equitable tolling "in situations where, despite all due diligence, the party invoking equitable tolling is unable to obtain vital information bearing on the existence of the claim." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011) (quotation omitted).

It is apparent from the face of the complaint that these claims are time barred. The limitation periods commenced when Salvador executed her loan documents in 2006, because she "could have discovered the alleged disclosure violations and discrepancies at that time." *Id.* She does not allege that she was not given a copy of her note, and she attaches a copy of it to her complaint. Salvador does not identify any basis for equitable tolling. She did not file this complaint until November 2017, more than eleven years after she originated her loan. These claims thus are untimely, and I dismiss them with prejudice.[2]

**C. Nevada Revised Statutes § 598D**

Salvador alleges the negative amortization loan is illegal under Nevada Revised Statutes § 598D. The defendants argue that § 598D is directed at the practices of the lender who originates the loan, and they were not involved in the loan origination. They also argue Salvador has not alleged that the loan's terms were not fully disclosed to her. Finally, they contend the limitation period has run.

Salvador responds that the loan was unaffordable and was made to her based on her assets rather than her ability to repay the loan. She also argues she was induced into the loan because she was told it was a sound decision to start with a lower payment because the property value

---

[2] Salvador does not specifically mention rescission, but any such claim would also be untimely. *See id.* § 1635(f).

would increase and she could refinance within a few years, but then the market turned and she was unable to do so. She asserts the Meridias salespeople defrauded her.

At the time Salvador's loan was originated, § 598D made it an unfair lending practice "for a lender to . . . [k]nowingly or intentionally make a home loan to a borrower based solely upon the equity of the borrower in the home property and without determining that the borrower has the ability to repay the home loan from other assets, including, without limitation, income." Nev. Rev. Stat. § 598D.100(1)(b) (2006). Salvador's claim under § 598D fails because she does not allege that any of these defendants was involved with the origination of the loan. Consequently, none of these defendants made the loan to her. *See Davenport v. Homecomings Fin., LLC*, No. 56322, 2014 WL 1318964, at *2 (Nev. Mar. 31, 2014); *Vo v. Am. Brokers Conduit*, No. 3:09-CV-00654-LRH-VPC, 2010 WL 2696407, at *2 (D. Nev. July 2, 2010) ("A loan servicer who did not make the loan at issue cannot be subject to an unfair lending practices claim."). Moreover, it is apparent from the face of the complaint that this claim is time barred. *See* Nev. Rev. Stat. § 11.190(3)(a) (providing for a three-year limitation period for an "action upon a liability created by statute, other than a penalty or forfeiture"). I therefore dismiss this claim with prejudice.

**D. Request for Mortgage Note Audit**

Salvador alleges BONY lacks standing to foreclosure because there are no records in the recorder's office showing transfers to Countrywide or Bank of America even though these two entities collected mortgage payments from her. She requests a mortgage note audit or any other relief the court finds justifiable. The defendants argue there is no legal basis for this requested relief. Additionally, BONY and Bayview argue Salvador lacks standing to challenge any assignments of the loan or deed of trust.

Salvador fails to state a claim against any defendant, so she has no basis to request relief such as a mortgage note audit. Further, Salvador has no standing to challenge the assignment from MERS to BONY. *See Wood v. Germann*, 331 P.3d 859, 861 (Nev. 2014); *Hakimi v. Bank of New York Mellon*, No. 2:14-CV-02215-JCM-CWH, 2015 WL 2097872, at *5 (D. Nev. May 5, 2015); *Viloria v. Premium Capital Funding LLC*, No. 2:12-CV-00406-KJD-PAL, 2012 WL

4361252, at *3 (D. Nev. Sept. 20, 2012). Moreover, Salvador has twice participated in the FMP, which twice issued a certificate allowing BONY to proceed with the foreclosure process. Under the FMP, for a certificate of foreclosure to issue, the beneficiary of the deed of trust or its representative was required to produce documents showing it actually had the power to foreclose. *See Edelstein v. Bank of New York Mellon*, 286 P.3d 249, 255 (Nev. 2012) (en banc). BONY apparently made this showing because the certificate to foreclose was issued two separate times.

Additionally, Salvador's allegation that Countrywide and Bank of America are not in the recorded chain of title does not plausibly allege the transfer from MERS to BONY is invalid. First, the lack of recorded transfers to Countrywide and Bank of America likely is a function of MERS being the original beneficiary under the deed of trust. "MERS is a private electronic database . . . that tracks the transfer of the 'beneficial interest' in home loans, as well as any changes in loan servicers." *Id.* at 256 (quotation omitted). As the Supreme Court of Nevada has explained:

> Typically, when a loan is originated, MERS is designated in the deed of trust as a nominee for the lender and the lender's successors and assigns, and as the deed's beneficiary which holds legal title to the security interest conveyed. MERS' role in subsequent note transfers depends on whether or not the note is transferred to another MERS member or a non-MERS member. If the lender sells or [transfers] the . . . [note] to another MERS member, the change is recorded only in the MERS database, not in county records, because MERS continues to [be the beneficiary of record] on the new lender's behalf. According to MERS, this system saves lenders time and money, and reduces paperwork, by eliminating the need to prepare and record assignments when trading loans. However, [a] side effect . . . is that a transfer of an interest in a mortgage [note] between two MERS members is unknown to those outside the MERS system. Conversely, [i]f the . . . [note] is sold to a non-MERS member, the [assignment] of the deed from MERS to the new lender is recorded in county records and the [note] is no longer tracked in the MERS system.

*Id.* (internal citations and quotations omitted). Countrywide and Bank of America likely were MERS members, so the transfers to them were not recorded. But even if they were not, Salvador does not plausibly allege facts showing that the transfer from MERS, who was the original beneficiary, to BONY is invalid. Instead, she at most suggests that Countrywide and Bank of America improperly collected mortgage payments from her, although she does not allege these

payments were not applied to her loan now held by BONY. Consequently, Salvador has no basis to request a "mortgage note audit" or some other relief.

### E. Amendment

In her oppositions, Salvador requests to add MERS as a defendant. She also alludes to other claims she might bring against these defendants, such as conspiracy or civil RICO.

Generally, a plaintiff may amend her complaint once "as a matter of course" within 21 days after serving it, or 21 days after service of a responsive pleading or motion. Fed. R. Civ. P. 15(a)(1). In all other cases, a party may amend her pleading only by leave of court or with written consent of the adverse party. Fed. R. Civ. P. 15(a)(2). I should "freely give leave when justice so requires." *Id.* I consider five factors in deciding whether to grant leave to amend: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended his complaint." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). The futility analysis determines whether the proposed amendment would survive a challenge of legal insufficiency under Federal Rule of Civil Procedure 12(b)(6). *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir.1988).

I deny leave to amend to reassert any of the claims alleged in the complaint against the defendants because amendment would be futile. As discussed above, Salvador's claims either do not exist as a private right of action, cannot be alleged against these defendants, or are time barred. I also deny Salvador's request to "add" MERS as a defendant because she has not filed a proper motion to amend identifying what claims she would assert against MERS, along with plausible factual allegations in support. To the extent her claims would be the same as the ones already asserted, they would fail for the reasons set forth in this order.

However, because Salvador is a pro se plaintiff, I will grant leave to amend to add other claims if Salvador can allege facts showing a plausible entitlement to relief. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992), *as amended* (May 22, 1992) (stating that "before dismissing a pro se complaint the district court must provide the litigant with notice of the

deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively").

Salvador suggests she would allege claims for civil conspiracy, civil RICO, and fraud.[3] To allege a civil conspiracy claim, Salvador must allege facts plausibly showing that "two or more persons [undertook] some concerted action with the intent to accomplish an unlawful objective for the purpose of harming [Salvador], and damage result[ed]." *Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 335 P.3d 190, 198 (Nev. 2014) (en banc). To allege a federal civil RICO claim, Salvador must allege facts plausibly supporting each of the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (quotations omitted). To allege fraud, Salvador must allege facts supporting each of the following elements: (1) the defendant made a false representation; (2) the defendant knew or believed that the representation was false (or had an insufficient basis for making the representation); (3) the defendant intended to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation; (4) the plaintiff justifiably relied on the misrepresentation; and the plaintiff was damaged as a result. *Bulbman, Inc. v. Nevada Bell*, 825 P.2d 588, 592 (Nev. 1992). Additionally, taking as true Salvador's allegations that she made mortgage payments to Countrywide and Bank of America, and accepting a reasonable inference from her allegations that these two entities were strangers to the mortgage, it is theoretically possible that she could assert claims against these two entities. I therefore will grant leave to amend if sufficient facts exist to support amendment.

Although I am granting leave to amend, as discussed below, Salvador has little to no likelihood of success on any claim against these defendants. However, because the Rules favor liberal amendment, particularly for pro se litigants, I will grant leave to amend.

---

[3] Salvador also mentions the Model Penal Code. But the Model Penal Code is not applicable law. It is a publication by a private entity that is a "source of guidance" for interpreting criminal law. *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 444 (1978). Consequently, Salvador may not amend to add a claim under the Model Penal Code because no such claim exists.

**IV. MOTION FOR INJUNCTIVE RELIEF**

Salvador moves to enjoin the impending foreclosure sale set for April 27. To obtain a preliminary injunction, Salvador must demonstrate: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships favors her, and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Alternatively, Salvador must demonstrate (1) serious questions on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships tips sharply in the plaintiff's favor, and (4) an injunction is in the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

Salvador cannot show even serious questions going to the merits. I have dismissed all of her claims with prejudice. Although I am granting her leave to amend, I see little to no likelihood of success on any claim Salvador might allege against these defendants that would justify enjoining the foreclosure sale, and it is likely any claim she would assert is time-barred. Salvador does not deny that her loan is in default and has been for many years now. BONY has twice obtained a certificate of foreclosure from the FMP. ECF Nos. 1 at 91; 69-10 at 2. Thus, BONY has demonstrated to the FMP's satisfaction that it has standing to foreclose.

In her motion, Salvador makes two new arguments. She first argues that because the transfers to Countrywide and Bank of America were not recorded, Quality cannot conduct the sale pursuant to Nevada Revised Statutes § 106.210(1). That statute states that if the beneficial interest under the deed of trust has been assigned, the trustee may not exercise the power of sale until that assignment is recorded. However, the assignment from MERS to BONY has been recorded. Consequently, § 106.210(1) does not preclude Quality from exercising the power of sale on BONY's behalf.

Next, Salvador argues Quality violated Nevada's Homeowner Bill of Rights because the March 26, 2018 notice of sale was not recorded within nine months of the April 8, 2016 notice of

default and election to sell. Quality responds that the time period was tolled because Salvador filed for bankruptcy and the FMP certificate on the second notice of default only recently issued.[4]

Under Nevada Revised Statutes § 107.550(1)(b), a "civil action for a foreclosure sale pursuant to NRS 40.430 involving a failure to make a payment required by a residential mortgage loan must be dismissed without prejudice, any notice of default and election to sell recorded pursuant to subsection 2 of NRS 107.080 or any notice of sale recorded pursuant to subsection 4 of NRS 107.080 must be rescinded, and any pending foreclosure sale must be cancelled, if . . . [a] notice of sale is not recorded within 9 months after the notice of default and election to sell is recorded pursuant to subsection 2 of NRS 107.080 . . . ." Section 107.550(2) tolls this time period under two circumstances relevant here. First, if the borrower files for bankruptcy, the time is tolled "until the bankruptcy court enters an order closing or dismissing the bankruptcy case or granting relief from a stay of foreclosure or trustee's sale." Nev. Rev. Stat. § 107.550(2)(a). Second, if the matter is required to be mediated under the FMP, the time is tolled "until the date on which Home Means Nevada, Inc., or its successor organization, issues the certificate pursuant to NRS 107.086 that mediation has been completed in the matter." *Id.* § 107.550(2)(b).

The notice of default was recorded on April 8, 2016. ECF No. 1 at 95. Salvador elected to participate in the FMP on May 9, 2016. ECF No. 74-1. Consequently, the nine months were tolled starting on May 9, 2016, at which point only one month had passed. Salvador filed for bankruptcy on October 14, 2016. ECF No. 69-8. The bankruptcy court dismissed the case on November 5, 2017. ECF No. 69-9. As a result, at a minimum the time from May 9, 2016 through November 5, 2017 was tolled. Quality filed the notice of trustee's sale on March 26, 2018. ECF No. 69-11. Consequently, the notice of sale was timely. Further, the FMP certificate related to the April 2016 notice of default was not issued until February 28, 2018 and was not recorded until March 8, 2018. ECF Nos. 69-10, 69-11. Thus, the entire time from May 9, 2016 through at least

---

[4] I initially found Quality's response lacking in evidentiary support, and so ordered a supplement. ECF No. 72.

February 28, 2018 was tolled. As a result, Quality's notice of sale was timely, and there is no basis to enjoin the sale under § 107.550.

In sum, Salvador cannot show a likelihood of success on any claim that would support enjoining the foreclose sale. Consequently, I deny her motion.

**V. CONCLUSION**

IT IS THEREFORE ORDERED that plaintiff Editha Salvador's motions for summary judgment **(ECF Nos. 39, 48) are DENIED**.

IT IS FURTHER ORDERED that defendant Quality Loan Servicing Corp.'s motion to strike **(ECF No. 41) is DENIED as moot**.

IT IS FURTHER ORDERED that the defendants' motions to dismiss **(ECF Nos. 11, 14, 19) are GRANTED.**

IT IS FURTHER ORDERED that plaintiff Editha Salvador may file an amended complaint consistent with this order, if sufficient facts exist to do so. Salvador must file her amended complaint on or before May 18, 2018. Failure to file an amended complaint by that date will result in dismissal of this case with prejudice.

IT IS FURTHER ORDERED that plaintiff Editha Salvador's motion to enjoin the foreclosure sale **(ECF No. 67) is DENIED**.

IT IS FURTHER ORDERED that the clerk of court shall seal ECF Nos. 1 and 3 because the attached exhibits contain unredacted social security numbers.

DATED this 25th day of April, 2018.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE